# EXHIBIT B

PUBLIC LAW 116–260—DEC. 27, 2020          134 STAT. 3291

the Secretary of Veterans Affairs with the authority to issue any new authorizations or orders for such care or such services in advance of such appropriation: *Provided further*, That this title shall take effect as if enacted on October 1, 2018: *Provided further*, That not later than 30 days after the date of enactment of this Act, the Department of Veterans Affairs, in consultation with the Office of Management and Budget, shall submit a report to the President and the Congress, similar to the report required pursuant to 31 U.S.C. 1351, detailing how, in the absence of the enactment of this title, the expenditures or obligations would have exceeded the amount available in fiscal year 2019 and fiscal year 2020 in the Medical Community Care appropriation: *Provided further*, That the report required in the preceding proviso shall also include an explanation as to how the Department plans to avoid incurring obligations for the Medical Community Care appropriation in excess of its available budgetary resources in fiscal year 2021 and future fiscal years pursuant to the recording of obligations required by this title.

*Effective date.*

*Consultation. Reports.*

# TITLE XVII—SUDAN CLAIMS RESOLUTION

*Sudan Claims Resolution Act.*

**SEC. 1701. SHORT TITLE.**

28 USC 1605A note.

This title may be cited as the "Sudan Claims Resolution Act".

**SEC. 1702. SENSE OF CONGRESS.**

It is the sense of Congress that—
  (1) the United States should support Sudan's democratic transition, particularly in light of the country's dire economic situation, and this is a critical moment to address longstanding issues in the relationship between the United States and Sudan;
  (2) as part of the process of restoring normal relations between Sudan and the United States, Congress supports efforts to provide meaningful compensation to individuals employed by or serving as contractors for the United States Government, as well as their family members, who personally have been awarded by a United States District Court a judgment for compensatory damages against Sudan; and
  (3) the terrorism-related claims of victims and family members of the September 11, 2001, terrorist attacks must be preserved and protected.

**SEC. 1703. DEFINITIONS.**

In this Act:
  (1) APPROPRIATE CONGRESSIONAL COMMITTEES.—The term "appropriate congressional committees" means—
    (A) the Committee on Foreign Relations and the Committee on the Judiciary of the Senate; and
    (B) the Committee on Foreign Affairs and the Committee on the Judiciary of the House of Representatives.
  (2) CLAIMS AGREEMENT.—The term "claims agreement" means the Claims Settlement Agreement Between the Government of the United States of America and the Government of the Republic of the Sudan, done at Washington, D.C., on October 30, 2020, including all annexes, appendices, side letters, related agreements, and instruments for implementation,

including the escrow agreement among the Central Bank of Sudan, the Federal Reserve Bank of New York, and the escrow agent appointed thereby, as well as the escrow conditions release agreement, set out in an exchange of diplomatic notes between the United States and Sudan on October 21, 2020, and subsequently amended on December 19, 2020.

(3) FOREIGN NATIONAL.—The term "foreign national" means an individual who is not a citizen of the United States.

(4) SECRETARY.—The term "Secretary" means the Secretary of State.

(5) STATE SPONSOR OF TERRORISM.—The term "state sponsor of terrorism" means a country the government of which the Secretary has determined is a government that has repeatedly provided support for acts of international terrorism, for purposes of—

(A) section 1754(c)(1)(A)(i) of the Export Control Reform Act of 2018 (50 U.S.C. 4813(c)(1)(A)(i));

(B) section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371);

(C) section 40(d) of the Arms Export Control Act (22 U.S.C. 2780(d)); or

(D) any other provision of law.

(6) SUDAN.—The term "Sudan" means the Government of the Republic of the Sudan.

**SEC. 1704. RECEIPT OF ADEQUATE FUNDS; IMMUNITIES OF SUDAN.**

(a) IMMUNITY.—

(1) IN GENERAL.—Subject to section 1706, and notwithstanding any other provision of law, upon submission of a certification described in paragraph (2)—

(A) Sudan, an agency or instrumentality of Sudan, and the property of Sudan or an agency or instrumentality of Sudan, shall not be subject to the exceptions to immunity from jurisdiction, liens, attachment, and execution under section 1605(a)(7) (as such section was in effect on January 27, 2008) or section 1605A or 1610 (insofar as section 1610 relates to a judgment under such section 1605(a)(7) or 1605A) of title 28, United States Code;

(B) section 1605A(c) of title 28, United States Code, section 1083(c) of the National Defense Authorization Act for Fiscal Year 2008 (Public Law 110–181; 28 U.S.C. 1605A note), section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (Public Law 104–208; 28 U.S.C. 1605 note), and any other private right of action relating to acts by a state sponsor of terrorism arising under Federal, State, or foreign law shall not apply with respect to claims against Sudan, or any of its agencies, instrumentalities, officials, employees, or agents in any action in a Federal or State court; and

(C) any attachment, decree, lien, execution, garnishment, or other judicial process brought against property of Sudan, or property of any agency, instrumentality, official, employee, or agent of Sudan, in connection with an action that is precluded by subparagraph (A) or (B) shall be void.

PUBLIC LAW 116–260—DEC. 27, 2020          134 STAT. 3293

(2) CERTIFICATION.—A certification described in this paragraph is a certification by the Secretary to the appropriate congressional committees stating that—

(A) the August 12, 1993, designation of Sudan as a state sponsor of terrorism has been formally rescinded;

(B) Sudan has made final payments with respect to the private settlement of the claims of victims of the U.S.S. Cole attack; and

(C) the United States Government has received funds pursuant to the claims agreement that are sufficient to ensure—

(i) payment of the agreed private settlement amount for the death of a citizen of the United States who was an employee of the United States Agency for International Development in Sudan on January 1, 2008;

(ii) meaningful compensation for claims of citizens of the United States (other than individuals described in section 1707(a)(1)) for wrongful death or physical injury in cases arising out of the August 7, 1998, bombings of the United States embassies located in Nairobi, Kenya, and Dar es Salaam, Tanzania; and

(iii) funds for compensation through a fair process to address compensation for terrorism-related claims of foreign nationals for wrongful death or physical injury arising out of the events referred to in clause (ii).

(b) SCOPE.—Subject to section 1706, subsection (a) of this section shall apply to all conduct and any event occurring before the date of the certification described in subsection (a)(2), regardless of whether, or the extent to which, application of that subsection affects any action filed before, on, or after that date.

(c) AUTHORITY OF THE SECRETARY.—The certification by the Secretary referred to in subsection (a)(2) may not be delegated and may not be subject to judicial review.

**SEC. 1705. REAUTHORIZATION OF AND MODIFICATIONS TO UNITED STATES VICTIMS OF STATE SPONSORED TERRORISM FUND.**

(a) IN GENERAL.—The Justice for United States Victims of State Sponsored Terrorism Act (34 U.S.C. 20144) is amended—

(1) in subsection (c)(2)(A)(i), by striking "state sponsor of terrorism" and inserting "foreign state that was designated as a state sponsor of terrorism at the time the acts described in clause (ii) occurred or was so designated as a result of such acts";

(2) in subsection (e)(6), by striking "January 2, 2030" each place it appears and inserting "January 2, 2039"; and

(3) in subsection (j)(6), in the first sentence, by inserting after "final judgment" the following: ", except that the term does not include payments received in connection with an international claims agreement to which the United States is a state party or any other settlement of terrorism-related claims against Sudan".

(b) LUMP SUM CATCH-UP PAYMENTS FOR 9/11 VICTIMS, 9/11 SPOUSES, AND 9/11 DEPENDENTS.—Subsection (d)(4) of the Justice

134 STAT. 3294          PUBLIC LAW 116–260—DEC. 27, 2020

for United States Victims of State Sponsored Terrorism Act (34 U.S.C. 20144) is amended—

(1) in subparagraph (A), by striking "subparagraph (B)" and inserting "subparagraphs (B) and (C)"; and

(2) by adding at the end the following:

"(C) LUMP SUM CATCH-UP PAYMENTS FOR 9/11 VICTIMS, 9/11 SPOUSES, AND 9/11 DEPENDENTS.—

Deadline.
Audit.
Federal Register, publication.
Notice.

"(i) IN GENERAL.—Not later than 90 days after the date of enactment of this subparagraph, and in accordance with clauses (i) and (ii) of subsection (d)(3)(A), the Comptroller General of the United States shall conduct an audit and publish in the Federal Register a notice of proposed lump sum catch-up payments to 9/11 victims, 9/11 spouses, and 9/11 dependents who have submitted applications in accordance with subparagraph (B) in amounts that, after receiving the lump sum catch-up payments, would result in the percentage of the claims of 9/11 victims, 9/11 spouses, and 9/11 dependents received from the Fund being equal to the percentage of the claims of 9/11 family members received from the Fund, as of the date of enactment of this subparagraph.

Time period.

"(ii) PUBLIC COMMENT.—The Comptroller General shall provide an opportunity for public comment for a 30-day period beginning on the date on which the notice is published under clause (i).

Determination.

"(iii) REPORT.—Not later than 30 days after the expiration comment period in clause (ii), the Comptroller General of the United States shall submit to the Committee on the Judiciary and the Committee on Appropriations of the Senate, the Committee on the Judiciary and the Committee on Appropriations of the House of Representatives, and the Special Master a report that includes the determination of the Comptroller General on—

"(I) the amount of the lump sum catch-up payment for each 9/11 victim;

"(II) the amount of the lump sum catch-up payment for each 9/11 spouse;

"(III) the amount of the lump sum catch-up payment for each 9/11 dependent; and

"(IV) the total amount of lump sum catch-up payments described in subclauses (I) through (III).".

**SEC. 1706. PRESERVATION OF CERTAIN PENDING INTERNATIONAL TERRORISM CLAIMS AGAINST SUDAN.**

(a) FINDINGS.—Congress makes the following findings:

(1) It is the long-standing policy of the United States that civil lawsuits against those who support, aid and abet, and provide material support for international terrorism serve the national security interests of the United States by deterring the sponsorship of terrorism and by advancing interests of justice, transparency, and accountability.

(2) Neither the claims agreement, nor any other aspect of the effort to normalize relations with Sudan—

(A) resolved claims against Sudan involving victims and family members of the September 11, 2001, terrorist attacks; or

(B) otherwise advanced the interests of the victims and family members of the September 11, 2001, terrorist attacks.

(3) The claims referenced in paragraph (2)(A) remain pending in the multidistrict proceeding 03–MDL–1570 in the United States District Court for the Southern District of New York, and subsection (c) preserves and protects those claims.

(b) SENSE OF CONGRESS.—It is the sense of Congress that the executive branch should not file a Statement of Interest or any other submission, or intervene in any other way, in the multidistrict proceeding 03–MDL–1570, in connection to the rescission of the designation of Sudan as a state sponsor of terrorism or the restoration of Sudan's immunities from jurisdiction and execution in conformity with this Act, if such action would disadvantage terrorism victims.

(c) IN GENERAL.—Nothing in this Act shall apply to, be construed to apply to, or otherwise affect—

(1) any claim in any of the proceedings comprising the multidistrict proceeding 03-MDL-1570 in the United States District Court for the Southern District of New York brought by any person who, as of the date of the enactment of this Act, has a claim pending against Sudan (including as a member of a class certified under Rule 23 of the Federal Rules of Civil Procedure or as a putative member of such a class pending certification); or

(2) the enforcement of any judgment in favor of such person entered in such proceeding.

(d) APPLICABLE LAW.—Proceedings described in subsection (c) shall be governed by applicable law in effect before the date of the enactment of this Act, including—

(1) chapter 97 of title 28, United States Code (commonly known as the "Foreign Sovereign Immunities Act of 1976"), including 28 U.S.C. 1605A note;

(2) section 201 of the Terrorism Risk Insurance Act of 2002 (Public Law 107–297; 28 U.S.C. 1610 note), with respect to any asset that, on or after the date of enactment of this Act, is designated as a blocked asset (as defined in subsection (d)(2) of that section);

(3) rules governing the rights of parties to amend pleadings; and

(4) other relevant provisions of law.

(e) RULE OF CONSTRUCTION.—Nothing in this section shall alter, impact the interpretation of, or otherwise affect—

(1) any section of chapter 97 of title 28, United States Code; or

(2) any other provision of law.

**SEC. 1707. COMPENSATION FOR CERTAIN NATURALIZED UNITED STATES CITIZENS AND FOREIGN NATIONALS.**

(a) COMPENSATION.—

(1) IN GENERAL.—There is authorized to be appropriated $150,000,000 for payment of compensation, notwithstanding any other provision of law, to any individual who—

5

134 STAT. 3296 PUBLIC LAW 116–260—DEC. 27, 2020

(A) has been awarded a judgment in any of the cases set forth in section (c) of the Annex to the claims agreement; and
(B) is—
(i) a United States employee or contractor injured in connection with the bombings of the United States embassies located in Nairobi, Kenya, and Dar es Salaam, Tanzania, who became a United States citizen after August 7, 1998, and before the date of the enactment of this Act;
(ii) a family member—
(I) of a United States employee or contractor injured in connection with the bombings of the United States embassies located in Nairobi, Kenya, and Dar es Salaam, Tanzania; and
(II) who is a United States citizen as of the date of the enactment of this Act; or
(iii) a family member—
(I) of a foreign national United States employee or contractor killed during those bombings; and
(II) who is a United States citizen as of the date of the enactment of this Act.
(2) PAYMENTS.—With the requirement of achieving parity in compensation between individuals who became United States citizens after August 7, 1998, and individuals who were United States citizens on or before August 7, 1998, payment of compensation under paragraph (1) to—
(A) an individual described in paragraph (1)(B)(i) shall be based on the same standards used to determine the compensation for an employee or contractor injured in connection with the bombings described in that paragraph who was a United States citizen on or before August 7, 1998;
(B) an individual described in paragraph (1)(B)(ii) shall be on an equal basis to compensation provided to a family member of an individual described in subparagraph (A); and
(C) an individual described in paragraph (1)(B)(iii) shall be on an equal, or, where applicable, a pro rata basis to compensation provided to a family member of a United States employee or contractor who was a United States citizen killed during such bombings.
(b) DISTRIBUTION AND REQUIREMENTS.—
(1) DISTRIBUTION.—The Secretary shall distribute payments from funds made available to carry out subsection (a)(1) to individuals described in that subsection.
(2) AUTHORIZATION LETTER.—Not later than December 31, 2021, the Secretary shall send a letter to each individual who will receive payment under paragraph (1) informing the individual of the amount of compensation the individual will receive pending the execution of any writings under paragraph (3), and the standards used to determine compensation under subsection (a)(2), taking into account the individual's final judgment amount.
(3) REQUIREMENT BEFORE DISTRIBUTION.—Before making a payment to an individual under paragraph (1), and after

PUBLIC LAW 116–260—DEC. 27, 2020     134 STAT. 3297

the delivery of the authorization letter under paragraph (2), the Secretary shall require the individual to execute a writing that includes a waiver and release of all the individual's rights to assert claims for compensatory or other relief in any form or to enforce any judgment against Sudan in connection with, and any claims against the United States related to, any claim, suit, or action specified in Article II of the claims agreement.

(c) FOREIGN NATIONALS.—Notwithstanding any other provision of law or the claims agreement—

(1) individuals described in subsection (a)(1) are not eligible to receive any compensation as provided by Sudan pursuant to Article III of the claims agreement; and

(2) the funds provided by Sudan for distribution of compensation to such individuals pursuant to the Annex of the claims agreement shall be redistributed—

(A) among all other individuals eligible for compensation under section (c) of the Annex to the claims agreement consistent with the principles set out in that Annex; or

(B) if Sudan and the foreign nationals eligible for compensation reach a private settlement, then pursuant to the terms of that settlement.

(d) DEPARTMENT OF STATE REPORTING REQUIREMENTS.—

(1) INITIAL REPORT.—Not later than 90 days after the date of the enactment of this Act, the Secretary shall submit to the appropriate congressional committees a report that includes a detailed description of the plan of the Department of State for the distribution of payments to each category of individual described in subsection (a)(1), including how the Department is arriving at compensation levels for each individual and the amount of compensation each such individual will receive from funds made available to carry out that subsection.

(2) UPDATED REPORT.—Not later than December 31, 2021, the Secretary shall submit to the appropriate congressional committees a report describing—

(A) whether the distribution plan described in paragraph (1) was carried out; and

(B) whether compensation levels were provided as described in the report required by paragraph (1).

(e) COMPTROLLER GENERAL REPORT.—Not later than December 31, 2022, the Comptroller General of the United States shall submit to the appropriate congressional committees a report assessing the implementation of this section by the Department of State, including whether—

(1) all distributions were made in accordance with the requirements of subsections (a), (b), and (c); and

(2) all individuals described in subsection (a)(1) received compensation from amounts made available to carry out that subsection in the manner described in subsection (a)(2).

**SEC. 1708. TREATY AND EXECUTIVE AGREEMENT PRACTICE.**

(a) FINDINGS.—Congress makes the following findings:

(1) Congress and the executive branch share responsibility for the foreign relations of the United States pursuant to Article I and Article II of the Constitution of the United States.

(2) All legislative powers of the Federal Government, including on matters of foreign relations, are vested in the

134 STAT. 3298    PUBLIC LAW 116–260—DEC. 27, 2020

Congress of the United States pursuant to section 1 of Article I of the Constitution.

(3) The executive branch may not direct Congress to take any action, nor may it convey any legislative or other power assigned to Congress under the Constitution to any entity, domestic or foreign.

(4) The original escrow release conditions agreement prescribed specific legislative text and purported both to require enactment of such text and provide a veto to Sudan over exceptions to that text.

(5) Congress rejected the approach described in paragraph (4).

(6) The executive branch and Sudan subsequently amended the escrow release conditions agreement to eliminate the specific legislative text as well as the purported requirement for enactment and the purported veto over exceptions to that text.

(b) AMENDMENT TO CASE-ZABLOCKI ACT.—Section 112b of title 1, United States Code, is amended by adding at the end the following:

"(g) It is the sense of Congress that the executive branch should not prescribe or otherwise commit to or include specific legislative text in a treaty or executive agreement unless Congress has authorized such action.".

[margin note: Theodore Roosevelt Presidential Library Conveyance Act of 2020. North Dakota.]

# TITLE XVIII—THEODORE ROOSEVELT PRESIDENTIAL LIBRARY CONVEYANCE ACT OF 2020

## SEC. 1801. SHORT TITLE.

This title may be cited as the "Theodore Roosevelt Presidential Library Conveyance Act of 2020".

## SEC. 1802. DEFINITIONS.

In this Act:

(1) MAP.—The term "map" means the map entitled "Project Number P08122-2016-009", depicting a 93 acre site in sections 21 and 28, T. 140 N., R. 102 W., Billings County, North Dakota, and dated December 8, 2020.

(2) PRESIDENTIAL LIBRARY.—The term "Presidential Library" means the Theodore Roosevelt Presidential Library Foundation, a North Dakota nonprofit corporation.

(3) SECRETARY.—The term "Secretary" means the Secretary of Agriculture, acting through the Chief of the Forest Service.

## SEC. 1803. CONVEYANCE OF CERTAIN NATIONAL FOREST SYSTEM LAND TO THE PRESIDENTIAL LIBRARY.

[margin note: Deadline.]

(a) CONVEYANCE.—Subject to this section, if the Presidential Library submits to the Secretary not later than 1 year after the date of enactment of this Act a written request for the conveyance of the approximately 93 acres of National Forest System land, as generally depicted on the map, the Secretary shall, on the earliest date practicable, convey to the Presidential Library by quitclaim deed all right, title, and interest of the United States in and to that land.