UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**Sharon Weinstock, *et al.*,**

**Plaintiffs,**

**v.**

**Republic of the Sudan, *et al.*,**

**Defendants.**

**Civil Case No. 20-cv-3021 (RJL)**

**MEMORANDUM OPINION**

March 20th, 2025 [Dkt. #18]

## I. BACKGROUND

On November 30, 1993, Yitzach Weinstock ("Weinstock"), a U.S. citizen, was visiting Jerusalem when he was killed in a terrorist attack carried out by Hamas operatives. Am. Compl. [Dkt. #8] ¶¶ 45–53. Decades later, on October 20, 2020, Weinstock's estate and members of his family (collectively, "plaintiffs") filed this suit against Sudan, seeking damages for the attack and asserting the Court has jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"). *See* Compl. [Dkt. #1].

On October 30, 2020—only ten days after plaintiffs filed suit—the United States signed a Claims Settlement Agreement (the "Agreement") with Sudan which espoused all claims by U.S. nationals against Sudan related to terrorist attacks on foreign soil. Am. Compl. ¶ 5. Sudan, in exchange, agreed to pay $335 million to compensate victims of certain attacks with whom Sudan had previously reached private settlement agreements.

*Id.* ¶¶ 56–58, 63–64. Weinstock did not receive compensation under the Agreement, but his claims were still espoused. *Id.* ¶¶ 83–84.

In conjunction with the Agreement, Congress enacted the Sudan Claims Resolution Act (the "Act"), which restored Sudan's sovereign immunity and stripped U.S. courts of subject matter jurisdiction to hear terrorism-related claims against Sudan. *Id.* ¶¶ 85–88; Sudan Claims Resolution Act, Pub. L. No. 116-260, 134 Stat. 3291 (2020) (codified at 28 U.S.C. § 1605A (note)). There was one exception: U.S. courts retained jurisdiction over claims stemming from the September 11, 2001 terrorist attacks. Am. Compl. ¶¶ 88–90.

After these developments, plaintiffs filed an amended complaint against Sudan, adding as defendants the United States, the U.S. Attorney General, and the U.S. Secretary of State (collectively, the "federal defendants"). *See generally id.* The claims against the federal defendants seek declaratory judgments that the Agreement and the Act are unconstitutional. *See id.* ¶¶ 126–53. The federal defendants moved to dismiss those claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Fed. Defs.' Mot. to Dismiss the Am. Compl. ("Defs.' Mot.") [Dkt. #18]. Plaintiffs oppose the motion. Pls.' Opp'n to Defs.' Mot. ("Pls.' Opp'n") [Dkt. #21]. For the reasons set forth below, I will **GRANT** the federal defendants' motion.

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing a Rule 12(b)(6) motion to dismiss, the Court "must treat the complaint's factual allegations as true . . . and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Holy Land Found. For Relief & Dev. v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)).

## III. ANALYSIS

Plaintiffs' two claims against the federal defendants assert that the Agreement and the Act are unconstitutional. Am. Compl. ¶¶ 126–53. Addressing each claim in turn, I find that neither holds water.

Plaintiffs' Fourth Cause of Action. Plaintiffs first seek a declaratory judgment that the Agreement and the Act are unconstitutional because they violate equal protection under the Fifth Amendment. *Id.* ¶¶ 126–48. According to plaintiffs, the Agreement and the Act together treat plaintiffs differently than similarly situated victims of Sudan-sponsored terrorism. *See id.* ¶ 137.

Our Circuit has already held that the Act does *not* violate equal protection in a factually similar case, *Mark v. Republic of the Sudan*, 77 F.4th 892 (D.C. Cir. 2023). In *Mark*, our Circuit applied rational basis review, which required "uphold[ing] the Act's statutory classifications 'if there is any reasonably conceivable state of facts that could provide a rational basis for' them." *Id.* at 897 (quoting *FCC v. Beach Commc'ns*, 508 U.S. 307, 313 (1993)). The Act cleared rational basis review, as it "fosters stronger relations with Sudan by limiting its potential liability to United States nationals" and "rationally

distinguishes between terrorist attacks in general and the September 11 attacks." *Id.* at 897–98.

While *Mark* is informative, it cannot, however, answer all of the questions before me. Our Circuit Court in *Mark* addressed only whether the district court had subject matter jurisdiction, which required evaluating the constitutionality of just the Act and its jurisdiction-stripping provision; the Circuit did not reach the constitutionality of the Agreement. *See id.* at 897 n.3. Thus I must still determine whether the Agreement violates equal protection.[1]

The appropriate standard of review for the Agreement is rational basis review, as the purported disparate treatment did not proceed along suspect lines or infringe constitutional rights. *See Am. Bus. Ass'n v. Rogoff*, 649 F.3d 734, 742–43 (D.C. Cir. 2011) (applying rational basis review to a claim that a statute "violates equal protection by singling out [some individuals] for special treatment"); *see also Mark*, 77 F.4th at 897. Nevertheless, plaintiffs urge the Court to apply heightened scrutiny "because the [G]overnment and Sudan misrepresented the rationale of the disparate treatment." *See* Pls.' Opp'n 7; Am. Compl. ¶¶ 72–80. According to plaintiffs, the Government and Sudan claim that certain victims received compensation under the Agreement because they had previously reached private settlement agreements with Sudan, but in reality those "private" settlement agreements were arranged by the U.S. Government as a pretext for favoring those victims. *See* Pls.' Opp'n 6–7; Am. Compl. ¶ 79 n.3.

[1] Even so, the *Mark* reasoning is highly relevant to my analysis of the Agreement's constitutionality.

Even assuming for the sake of argument that plaintiffs plausibly alleged this pretext, that would address only one potential rational basis—namely, that the Agreement compensated certain victims because they had already reached settlement agreements with Sudan. Under rational basis review, a plaintiff lodging an equal protection attack "must 'negative *any* reasonably conceivable state of facts that could provide a rational basis for the classification.'" *XP Vehicles, Inc. v. DOE*, 118 F. Supp. 3d 38, 77 (D.D.C. 2015) (emphasis added) (quoting *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001)); *see also Hettinga v. United States*, 770 F. Supp. 2d 51, 59 (D.D.C. 2011) (same). Thus, when multiple rational bases are proffered, plaintiffs cannot refute just one and succeed as to all of them.[2]

Here, the federal defendants have proposed two other compelling rational bases for the Agreement, neither of which is negated by plaintiffs' claim that the U.S. Government was involved in the private settlement agreements. The federal defendants assert that (1) "[t]he espousal and disposal of claims related to overseas terrorist attacks 'fosters stronger relations with Sudan by limiting its potential liability to United States nationals' and 'eliminating "sources of friction between the two sovereigns,"'" Defs.' Mot. 10 (quoting *Mark*, 77 F.4th at 897–98); and (2) it was reasonable for the Government to "[p]rioritiz[e] compensation for attacks on [G]overnment institutions and personnel 'over other attacks,'" *id.* (quoting *Mark*, 77 F.4th at 898).

[2] This is the case even when plaintiffs claim pretext because, "[i]n traditional equal protection contexts, the subjective motivations of the government actor are not considered." *See XP Vehicles, Inc.*, 118 F. Supp. 3d at 77 (citing *Beach Commc'ns, Inc.*, 508 U.S. at 315). "[A] pretext allegation alone is not sufficient to undermine an otherwise rational basis for government conduct . . . ." *Id.*

At the outset, these rational bases parallel those previously upheld by our Circuit Court in *Mark* regarding the Act. *See Mark*, 77 F.4th at 897–98. Additionally, I find that these are sound justifications *even if it is true* that the U.S. Government was involved in the private settlement agreements and was favoring certain victims over others. The United States has a legitimate interest in advancing diplomatic relations with foreign countries, including by limiting other countries' liability to U.S. nationals. *See Dames & Moore v. Regan*, 453 U.S. 654, 679–80 (1981) (upholding the Executive Branch's power "to settle the claims of its nationals against foreign countries" without the nationals' "consent, or even without consultation with them, usually without exclusive regard for their interests, as distinguished from those of the nation as a whole").

Negotiating these types of claims resolution agreements naturally requires compromise, and the Executive Branch would have to draw a line somewhere between the U.S. nationals who would receive compensation and those who would not. *See Mark v. Republic of Sudan*, 2021 U.S. Dist. LEXIS 194234, at *8–9 (D.D.C. Oct. 7, 2021). "[C]ourts must be especially hesitant to second-guess where that line falls," *see id.*, and here I must decline to engage in such Monday morning quarterbacking. The federal defendants have proffered that the Executive Branch drew the line so as to prioritize compensation for attacks on Government institutions and employees. *See* Def.'s Mot. 10. This is a rational approach and I will not rule that the Executive Branch should have negotiated for compensation for more victims at an unknown cost to the nation's foreign policy goals. *See Mark*, 2021 U.S. Dist. LEXIS 194234, at *11.

In sum, plaintiffs have not rebutted the federal defendants' rational bases for the Agreement and, as such, the Agreement survives rational basis review. Our Circuit has already held that the Act does not violate equal protection either. *See Mark*, 77 F.4th at 897.[3] Thus the fourth cause of action will be dismissed with prejudice.[4]

Plaintiffs' Fifth Cause of Action. Plaintiffs also seek a declaratory judgment that the Act is unconstitutional because it "denies a judicial forum for a colorable constitutional claim" and "is an infringement of due process and constitutional separation of powers." Am. Compl. ¶ 151.

This claim is perplexing. Plaintiffs allege that "[t]he Act, as construed by [our] Circuit, strips federal courts of jurisdiction to consider the Weinstocks' constitutional claims." *Id.* It is not clear at all what "constitutional claims" I am unable to hear. The Act only strips courts of jurisdiction to hear claims against Sudan. Here, plaintiffs have not brought any constitutional claims against Sudan. *See id.* ¶¶ 101–25.[5] The only constitutional claims are against the federal defendants, and the Act has no impact on the

---

[3] Plaintiffs argue that the Court need not follow *Mark*'s holdings regarding the Act because our Circuit did not consider certain evidence—a USAID press release—which purportedly supports their argument that the U.S. Government was involved in the private settlement agreements. Pl.'s Opp'n 7–8. The *Mark* plaintiffs only raised that evidence in their reply brief before our Circuit, so, according to plaintiffs here, the Circuit Court "never considered" it. *Id.* I decline to follow plaintiffs' logical leap. It may be that our Circuit *did* consider the evidence but did not find it compelling or persuasive. In any event, the alleged pretext would not negate the other rational bases for the Act upheld by our Circuit in *Mark*.

[4] "Dismissal with prejudice is warranted when 'the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328, 1340 (D.C. Cir. 2015) (quoting *Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006)). Here, even if plaintiffs could plausibly allege pretext, that would address only one of the rational bases supporting the Agreement and the Act. There are multiple other rational bases which have been upheld by our Circuit and which plaintiffs cannot refute as a matter of law. Dismissal with prejudice is therefore appropriate.

[5] The causes of action against Sudan (1) seek damages under 28 U.S.C. § 1605A(c), the terrorism exception to the FSIA; (2) allege negligence under Israeli law; and (3) allege aiding and abetting under Israeli law. *See* Am Compl. ¶¶ 101–25.

Court's jurisdiction to hear those claims.[6] In fact, the Court *has* considered those claims in connection with plaintiffs' fourth cause of action. Thus this fifth cause of action will be dismissed with prejudice as well.

## IV. CONCLUSION

For the foregoing reasons, the federal defendants' Motion to Dismiss is **GRANTED**. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

[6] To the extent plaintiffs are asserting that the Court cannot hear constitutional *arguments* they intend to make related to their claims against Sudan, this cause of action still fails. In that hypothetical, plaintiffs would have to properly serve Sudan, who would then presumably move to dismiss for lack of subject matter jurisdiction in light of the Act's jurisdiction-stripping provision. In briefing that motion to dismiss, plaintiffs would be free to oppose the motion on any grounds, including that the Act is unconstitutional. It is hard to imagine that an equal protection claim would be "colorable," as our Circuit has already explicitly held that the provision does not violate equal protection. *See generally Mark*, 77 F.4th 892. Regardless, plaintiffs are free to raise any other constitutional attacks against the Act. The Court would not be "preclude[d] . . . from considering [those] constitutional challenges." *See* Am. Compl. ¶ 153. Thus even under this generous reading of plaintiffs' fifth cause of action, the claim must be dismissed.